IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| KENT R. LOVE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 10-1278-JWL |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error as alleged by Plaintiff in the administrative law judge's (ALJ's) step three evaluation, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.     Background**

Plaintiff applied for disability insurance benefits on March 6, 2007 alleging disability since November 9, 2006. (R. 11, 115-24). The application was denied initially

and upon reconsideration, and Plaintiff requested a hearing before an ALJ. (R. 11, 55-56, 73-86). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael R. Dayton on February 11, 2009. (R. 11). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 24-54). ALJ Dayton issued his decision on July 21, 2009. (R. 11-23).

In the decision, the ALJ determined Plaintiff has not performed substantial gainful activity since his alleged date of onset, that he has a combination of severe impairments including degenerative joint disease of the right knee, bilateral flat feet, symptoms remaining after surgical repair of a meniscus tear in the left knee, hypertension, learning disorder or borderline intellectual functioning, antisocial personality disorder,[1] and depression, and that his impairments do not meet or medically equal the severity of any

---

[1]The court notes that the only mention of antisocial personality disorder in the decision occurs in the list of severe impairments. The ALJ did not discuss it elsewhere, and provided no citation to record evidence which contains such a diagnosis. Moreover, the court's searching review of the record does not reveal any indication that Plaintiff suffers from antisocial personality disorder. Dr. Blum's Psychiatric Review Technique Form, "affirmed as written" by Dr. Jessop, does not reveal any personality disorder. (R. 266, 273-74, 278, 297).

In a related vein, a treatment note signed by Drs. Niyakom and Boyce on December 10, 2007 reveals Plaintiff reported that he was in counseling with a psychologist, Dr. Jeff Lane. (R. 454). And, in a "Function Report" dated December 7, 2007, Plaintiff provided contact information for "Dr. Lane, Ph.D." (R. 206). However, there is no indication the agency sought treatment records from Dr. Lane.

Although Plaintiff does not allege error in regard to these circumstances, the court is troubled thereby, and orders that on remand the Commissioner shall clarify the basis for finding antisocial personality disorder is a severe impairment in this case, and attempt to secure treatment records from Dr. Lane and other psychiatric or psychological treatment providers, if any, who have treated Plaintiff.

Listed Impairment, including Listing 1.03 (resconstructive surgery or surgical arthrodesis of a major weight-bearing joint) and Listing 12.02 (organic mental disorders). (R. 13).

The ALJ assessed Plaintiff with the residual functional capacity (RFC) to perform "less than a full range of light work," and found certain limitations including, among others, standing and/or walking at least two hours in a workday, and sitting about six hours in a workday. (R. 15). In discussing his RFC assessment, the ALJ summarized the record evidence, including Plaintiff's reports and testimony and the medical records and opinions. (R. 16-21). He found both that Plaintiff's "statements and prior testimony concerning the intensity, persistence and limiting effects of [his] symptoms are generally credible," and that they are "not fully credible to the extent they are inconsistent with the residual functional capacity assessment." (R. 16). He concluded that he "found the claimant less than fully credible in respect to his alleged limitations." (R. 20). The ALJ accorded "significant weight" to the opinions of the state agency physician and psychologists, and "substantial weight" to the opinions of the examining consultants, but did not give either "controlling or substantial weight to opinions of any treating source including Doctors Niyakom and Boyce who prescribed use of a walker." (R. 21).

Based upon the RFC assessed and the testimony of the vocational expert, the ALJ determined that Plaintiff is unable to perform his past relevant work as a cook. (R.21). Nonetheless, based upon Plaintiff's age, education, work experience, and RFC, he determined that there are a significant number of jobs in the national economy which

Plaintiff is capable of performing, and he found that Plaintiff is not disabled within the meaning of the Act. (R. 22-23). Therefore, he denied Plaintiff's application. (R. 23).

Plaintiff sought review of the ALJ's decision and submitted a brief for the Appeals Council's consideration. (R. 6-7, 221-25). The Council considered Plaintiff's brief but found no reason to review the ALJ's decision, and denied Plaintiff's request for review. (R. 1-5). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)). Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800

(10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

5

1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses his RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff alleges four errors in the ALJ's decision. He claims (1) the ALJ erroneously failed to evaluate Listing 1.02A at step three of the sequential process; (2) the ALJ's credibility finding is not supported by substantial evidence; and (3) the ALJ erroneously failed to provide a hypothetical question to the vocational expert which included all of the limitations supported by the record evidence. (Pl. Br. 3-10). In his

argument regarding the failure to evaluate Listing 1.02A, Plaintiff also claims (4) the ALJ completely ignored the opinion of a treating physician, Dr. Shields, and erred in failing to attempt to recontact that physician. (Pl. Br. 6). The Commissioner argues that the ALJ properly determined Plaintiff's impairments do not meet a Listing, properly found Plaintiff's allegations regarding his symptoms were not fully credible, properly weighed the medical opinions, and properly relied upon the testimony of the vocational expert. (Comm'r Br. 10-21). In his reply brief, Plaintiff explains that he believes his condition equals Listing 1.02A because of his inability to ambulate effectively. (Reply 2).

## III. Step Three Evaluation

Plaintiff claims the ALJ erred at step three of the evaluation process because he did not specifically consider Listing 1.02A, and because, even though he specifically considered Listing 1.03, he did not discuss Plaintiff's ability to ambulate effectively as is required by both Listing 1.02A, and 1.03. He argues that the evidence shows impairments in Plaintiff's knees and feet bilaterally, that Plaintiff was prescribed the use of a walker, that Dr. Shields's notes showed Plaintiff had difficulty walking and was falling, and that Plaintiff's counsel suggested at the hearing that the impairment should be evaluated under Listing 1.02A; but that the ALJ ignored much of this evidence including Dr. Shields's opinion and merely relied upon the consultant's, Dr. Henderson's, report that Plaintiff walked with normal gait and station. The Commissioner argues that Plaintiff has not met his burden to show that his condition meets all of the criteria of Listing 1.02A, including evidence of the involvement of a major weight bearing joint, or

7

of the inability to ambulate effectively. In his reply brief, Plaintiff argues that "the ankles and feet are major weight-bearing joints, singularly or in combination," and that his major problem "is his inability to ambulate effectively," and he seeks remand "to address fully his inability to ambulate effectively." (Reply 2).

### A. The ALJ's Step Three Evaluation

In his step three evaluation, the ALJ stated he had considered the evidence discussed in assessing Plaintiff's RFC and concluded that Plaintiff's impairments do not meet or medically equal the severity of any Listed impairment, including Listings 1.03 and 12.02. (R. 13-14). He explained his finding with regard to Listing 1.03:

> The claimant's degenerative joint disease has been analyzed under the criteria of Medical Listings 1.03 and other musculoskeletal listings. Based on the opinions of C. A. Parsons, M.D., a State agency physician who reviewed and confirmed the physical residual capacity assessment of the claimant which is further discussed in Finding 5, the undersigned finds the severity of the claimant's physical symptoms or combination of physical symptoms do not meet or equal the requirements of any section of the Listings of Impairments in Subpart P, Appendix 1, Regulations No.4, including musculoskeletal section 1.03 (Exhibits 13F and 15F). In making this determination the undersigned considered signs and diagnostic results of the consultative evaluation conducted of the claimant by James G. Henderson, M.D., on October 24, 2007, which indicated that while the claimant had valgus deformity of both knees, a limited range of motion in the right knee, and some difficulty squatting, the claimant walked with normal gait and station and there were no signs of inflammatory changes, hyperthermia, or erythemia. Radiological images taken at the time of the evaluation indicated that while there was tiny calcific focus along the inferior surface of the glenoid rim in the right shoulder, there was no evidence of marginal spurring, eburnation, or erosive changes in the right shoulder and no abnormalities in the right elbow (Exhibit 12F).

(R. 14). The ALJ also stated he had considered the record evidence and the medical opinions in making his determination regarding medical equivalence. (R. 15).

### B. The Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling. 20 C.F.R. § 404.1525(a) (2010); see also, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see also, Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)). Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).

9

The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

**C.  Analysis**

Plaintiff argues that the ALJ erred in failing to specifically consider Listing 1.02A, and in failing to discuss Plaintiff's ability to ambulate effectively, but the Commissioner argues that Plaintiff failed to meet his burden to show the involvement of a major weight bearing joint, or the inability to ambulate effectively. The Commissioner points to record evidence in support of his argument, but the court is required to review the "final decision of the Commissioner," which in this case is the ALJ's decision. 42 U.S.C. § 405(g). It may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman, 511 F.3d at 1272 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d at 800; accord, Hackett, 395 F.3d at 1172. Moreover, it is prohibited from affirming a decision on the basis of appellate counsel's post hoc rationalizations for agency action; Knipe, 755 F.2d at 149 n.16; or creating post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). The starting point in the court's review is the rationale presented in the Commissioner's decision and not

10

what another party, or even the court, might view as a "proper" weighing of the evidence. 42 U.S.C. § 405(g).

In this case, the ALJ analyzed Plaintiff's impairments under Listing 1.03 and made his determination that the impairments did not meet or equal the criteria of any Listing including Listing 1.03 "[b]ased on the opinions of C.A. Parsons M.D.," who had reviewed and affirmed the Physical Residual Functional Capacity Assessment completed by Robert T. Hackney, a single decision maker. (R. 14); see also (R. 289-296) (Mr. Hackney's Physical RFC Assessment); (R. 298) (Dr. Parsons's Case Analysis). The ALJ stated that in making that determination he had also considered the signs and diagnostic results of Dr. Henderson's evaluation. (R. 14) (citing Ex. 12F (R. 284-88) (Dr. Henderson's report)). Plaintiff agrees that his condition does not meet any Listing, but he argues that his condition equals both Listings 1.02A and 1.03 because it causes inability to ambulate effectively.

As the parties agree, "inability to ambulate effectively, as defined in 1.00B2b," is one of the criteria of both Listing 1.02A and Listing 1.03. 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 1.02A, 1.03; see also (Pl. Br. 3) (arguing the ALJ failed to evaluate plaintiff's ability to ambulate effectively); (Comm'r Br. 11) (quoting Listing 1.02A). Moreover, as Plaintiff argues, the ALJ did not discuss ability to ambulate effectively when explaining his step three finding. Rather, he stated he based his decision on Dr. Parson's opinion and Dr. Henderson's report. Yet, neither Dr. Parsons's case analysis, the RFC affirmed by Dr. Parsons, nor Dr. Henderson's report discuss whether Plaintiff is able to ambulate

11

effectively or whether Plaintiff's condition meets or equals the criteria of any Listing including Listing 1.02A. To be sure, Dr. Henderson's report notes that, "Walking is unimpaired. The patient does not use an assistive device" (R. 284), and that "the patient walks with a normal gait and station." (R. 285). Moreover, Dr. Parsons found that Plaintiff is able to perform a limited range of light work, and that fact logically precludes finding that Dr. Parsons is of the opinion that Plaintiff meets or equals a listing. But, Dr. Henderson also found moderate to severe difficulty hopping, squatting, and arising from the sitting position, and mild to moderate difficulty with heel and toe walking.

Further, as Plaintiff asserts, Dr. Henderson's exam took place within the confines of a medical office, and says nothing regarding Plaintiff's ability to "walk a block at a reasonable pace on a rough or uneven surface," as is suggested in the regulation's discussion of the meaning of "inability to ambulate effectively." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 100B2b. Plaintiff also points to evidence that he was prescribed a walker by Drs. Niyakom and Boyce, that he could walk about half a block and then must then sit and rest for twenty minutes before walking again, and that Dr. Shields's treatment notes reflect difficulty with balance, difficulty walking, occasional falling, and severe pain and swelling in both feet. (Pl. Br. 4); see also (R. 203) (walking limits); (R. 302) (Dr. Shields's notes); (R. 434) (prescription for walker); (R. 455) ("Wrote Rx for walker to assist with ambulation."). While Dr. Henderson's report and Dr. Parsons's opinion can be understood to support a finding that Plaintiff's condition does not produce an inability to ambulate effectively, the prescription of a walker in conjunction with Dr. Shields's

12

treatment notes and Plaintiff's allegations of inability to walk a block might be understood to support a finding that Plaintiff's condition results in an inability to ambulate effectively.

The court may not weigh the evidence and resolve these ambiguities, that is the ALJ's responsibility. Yet, the ALJ did not do so. He did not discuss Plaintiff's ability to ambulate effectively, and made no mention whatsoever of Dr. Shields's treatment notes. While the Commissioner argues that Plaintiff has not met his burden to show inability to ambulate effectively, that was not the basis for the ALJ's step three finding, and the court may not rely upon or provide a post hoc rationalization to affirm the ALJ's decision. Remand is necessary for the ALJ to clarify the basis for finding antisocial personality disorder is a severe impairment, to attempt to secure treatment records from Dr. Lane and other psychiatric or psychological treatment providers, if any, who have treated Plaintiff, to properly consider Dr. Shields's treatment notes, to evaluate Plaintiff's ability to ambulate, and to determine whether Plaintiff's condition medically equals the criteria of Listing 1.02A.

Because the decision is being remanded for reconsideration of steps two and three of the sequential evaluation process, the proceedings on remand will necessarily involve reconsideration of the remaining steps including credibility determination, evaluation of medical opinions, RFC assessment, and steps four and five of the process. Therefore the court will not address Plaintiff's arguments relevant to those determinations, and Plaintiff may present them to the Commissioner on remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent with this opinion.

Dated this 7th day of July 2011, at Kansas City, Kansas.

                                        s:/ John W. Lungstrum
                                        **John W. Lungstrum**
                                        **United States District Judge**